## JOHN W. SIMMS et al. v. ROBERT THOMPSON et al.; MINITREE C. McFADIN et al., Appellants.

### In Banc, January 21, 1922.

1. **JUDGMENT: Motion to Vacate: In Lieu of Writ of Error Coram Nobis.** A motion to vacate a judgment for error of fact, and not for patent error of record, supported by evidence *dehors* the record, takes the place of the common-law writ of error *coram nobis*, and ·is in the nature of an independent and direct attack upon the judgment.

2. ———: ———: ———: **Pleading: Motion for New Trial: Bill of Exceptions.** A motion to vacate a judgment for error of fact is in the nature of an application for a writ of error *coram nobis*, and is in the nature of a pleading, and issues must be made up under it, but it does not open up the whole case for a new trial, but only those points and questions raised by it. The motion filed by the applicant, and by the parties to the original action, and the applicant's reply, are in the nature of answers and pleadings, and make up the issues; and the motion being a pleading, and instituting an independent proceeding, and not an adjunct of the original action, the appellate court cannot review matters of exception, in the absence of a motion for new trial, although the movent, upon a finding of facts and the rendition of judgment against him, filed a bill of exceptions.

3. ———: ———: ———: **Fraud or Mistake.** A motion to vacate a judgment in the nature of a writ of error *coram nobis* is not available for relief on the ground of fraud practiced upon the court in procuring it, or on the ground of accident or mistake, those being distinct grounds of relief in equity.

4. ———: **Unknown Heirs: Alleged to Be Non-Residents.** All allegation in a petition to quiet title that the unknown heirs and devisees of the original patentee of land were non-residents of the State of Missouri, so that the ordinary process of law could not be served upon them, is no ground for setting aside a judgment against them, although the motion alleges, and it is a fact, that they were all well known residents of an adjoining county, and were the owners of the fee in remainder in the lands.

5. ———: ———: ———: **Superfluous Allegation.** In a suit to quiet title plaintiff may proceed by publication ·against a defendant if

living, or against his unknown heirs if dead; and an averment' in his petition that the unknown heirs and devisees of a named patentee of the lands are non-residents of Missouri, so that the ordinary process of law cannot be served upon them, is wholly superfluous, since whether unknown defendants are or are not residents of the State is, under the statute, wholly immaterial, and a fact unnecessary to be stated; and even if such allegation were untrue and known by the court to be untrue, the residence or non-residence of such unknown defendants could have had no influence upon the court in the rendition of judgment against them, and the allegation is therefore no ground upon which a motion in the nature of a writ of error *coram nobis* to set aside the judgment can be sustained, since the rule governing such motions is that the fact must be such a fact that had it been known at the time judgment was rendered such judgment would not have been entered.

6. ———: Finality: Chain of Title as Notice: Will Recorded in Another County. Where the record of the patent in the General Land Office showed that the patentee of lands in Carroll County was a resident of Lafayette County, and the will of said patentee, devising said lands to his daughter and her children was probated and recorded in Lafayette County, but neither the patent nor the will was ever recorded in Carroll County, and in 1867 said daughter, by warranty deed, conveyed said lands to plaintiffs' grantors, and in 1909 plaintiffs brought suit by publication against the unknown heirs and devisees of said patentee, without actual knowledge that they resided in Lafayette County, said plaintiffs were not chargeable with notice that the will of said patentee had been probated and recorded in Lafayette County, or with notice that the bodily heirs of the daughter resided in said county, for the will did not lie in their chain of title, but they claimed adversely to it, and the judgment quieting the title in them cannot be set aside, by motion in the nature of a writ of error *coram nobis*, on the ground that it was concocted in fraud, but, three years after its rendition, became as conclusive as would a judgment rendered upon summons and personal service upon said remaindermen.

7. ———: Error of Fact: That Patentee Was Living: Quieting Title: Remedial Statute: Parties. It cannot be held as an error of fact that the trial court, in the suit to quiet title, brought by publication in 1909, against the patentee of lands patented in 1836 and his unknown heirs and devisees, believed and assumed that said patentee was still living. Being dead, the judgment against him was a nullity, but that fact did not affect the validity of the judgment against his unknown heirs and devisees properly joined as co-defendants. The statute to quiet title is highly remedial, and

it is always proper to join as a co-defendant one having an apparent interest, if living, or if dead, his unknown heirs and devisees.

8. ———: ———: **Finality of Decree That Plaintiffs Owned Fee Instead of Life Estate.** Where the patentee of land devised it to a daughter and her bodily heirs, and she conveyed it by warranty deed to the ancestor of plaintiffs, who brought suit against said patentee and his unknown heirs and devisees, to quiet the title, the will not having been probated or recorded in the county where the lands lie, it cannot be held, in the trial of a motion in the nature of a writ of error *coram nobis* to set aside the judgment filed in, the same case by such remaindermen, that the trial court committed error of fact in believing and supposing that plaintiffs were absolute owners in fee, whereas they simply owned the life estate of said daughter, and that if such fact had been presented the court would not have rendered said judgment. The judgment having determined that the plaintiffs were owners in fee, and the time within which it may be reviewed having expired, the court will not look into the cause of action on which the judgment was founded, to consider any fact which might have been presented on the trial and was not, and still less any fact which was put in issue and adjudicated.

9. ———: **Motion to Set Aside: In Lieu of Writ of Error Coram Nobis: Scope of Writ.** A motion in the nature of a writ of error *coram nobis* to vacate a judgment for delinquent taxes, rendered, on publication, against a defendant as a non-resident, whereas he was in fact a resident of the county, is not the proper procedure, but is a misconception of the function and scope of said writ. [Disapproving State ex rel. Hudson v. Heinrich, 14 Mo. App. 146.]

10. ———: ———: ———: **Quieting Title: Unknown Heirs: Verification of Petition: Error of Law.** Whether or not the petition in the action to quiet title brought by publication against unknown heirs and devisees must be verified by the affidavit of all the plaintiffs, or is sufficiently verified by the affidavit of one of them only, is a point that will not be determined in ruling a motion in the nature of a writ of error *coram nobis* to set aside the judgment, for the reason that the adjudication that the affidavit of one plaintiff was sufficient, if error, was an error of law apparent on the face of the record, and not an error of fact *dehors* the record.

11. ———: ———: ———: ———: **Probate of Will: Proceeding in Rem: Notice to World: Finality of Decree that Plaintiffs Owned Fee Instead of Life Estate.** An allegation in the motion in the nature of a writ of error *coram nobis* to set aside a judgment ad-

Simms v. Thompson.

judging that plaintiffs were owners of the land in fee, that under the provisions of a will, probated and recorded in another county only, the movents owned the remainder in fee and that the plaintiffs had knowledge thereof, since the probate of the will in said other county was a proceeding *i. rem* and constructive notice to all the world of the rights of movents thereunder, is inconsistent with the finding of the court that plaintiffs were owners in fee, and the judgment being final after the time in which it may be reviewed has elapsed, the court will not look into the cause of action upon which it was founded, and will not rule that the trial court erred in decreeing that the plaintiffs were owners of the fee instead of a life estate only.

12. ——: ——: ——: **Allegation of Duress and Fraud.** In this case it is unnecessary to decide whether a defendant who in a suit to quiet title is prevented by duress, fraud or excusable mistake from making a valid defense, can have relief by motion in the nature of a writ of error *coram nobis* to set aside the judgment, for the motion is not based on such ground. [On motion for rehearing.]

13. ——: ——: ——: **False Affidavit: Fraud.** If the judgment quieting title was obtained by a false affidavit attached to the petition, in which affiant stated he did not know the whereabouts of defendants and that he did not know they had an estate in remainder in fee in the lands, the proper procedure is a suit in equity to set aside the judgment for fraud, for a writ of error *coram nobis* is not available for relief on the ground of fraud. [On motion for rehearing.]

14. **QUIETING TITLE:** Constructive Service: Jurisdiction: Non-Residents. In a suit to quiet title an allegation that unknown defendants are non-residents, when in fact they were residents of the State, does not affect the question of jurisdiction; but if the allegations are otherwise sufficient, and the petition states that the defendants are unknown heirs and devisees of a co-defendant, and is verified in the manner prescribed by statute, the court has jurisdiction over the unknown defendants, and can disregard the averments that they are non-residents. [On motion for rehearing.]

15. ——: ——: **Finality of Judgment.** A judgment rendered on constructive service is as conclusive as one rendered on personal service, save the right of the defendant to appear within the time stated in the statute and have it set aside upon the showing of a good cause. [On motion for rehearing.]

16. ——: ——: **Allegations: Unknown Heirs of Deceased Remaindermen.** An action against the unknown heirs, descendants, dev-

isees and assigns of the original patentee, and alleging that "plaintiffs cannot further describe the interest of said unknown persons, nor how said interest, if any, is derived, because such is unknown to plaintiffs, and plaintiffs have described herein the right, title, interest and estate, if any, in said land of the said unknown defendants, and how said interest, title and estate were derived, so far as plaintiffs' knowledge extends," embraces the children of the deceased remaindermen of the said patentee who by his will devised said land to his daughter and her bodily heirs, and said children are thereby sued in their capacity of heirs of said deceased remaindermen. Obviously plaintiffs could not have alleged that said children had derived interests from the deceased remaindermen when their existence was unknown to them. [On motion for rehearing.]

17. ———: Finality: No Title: Limitations: Married Women. In a suit to quiet title, a judgment adjudging the plaintiffs to be the owners in fee, although it subsequently develops that their grantor had only a life estate and she is dead, is, on the ruling of a motion in lieu of a writ of error *coram nobis* to set it aside, to be held a finality, not only as to the question of title or no title, but also as to married women who were joined as unknown defendants and have been married ever since the life tenant conveyed the land to plaintiffs' ancestor, save and except the right to a review and to have said judgment set aside for cause within three years after its rendition. [On motion for rehearing.]

18. ———: Action by Remaindermen. A suit to quiet title may be maintained by remaindermen before the termination of the life estate. [On motion for rehearing.]

19. ———: Judgment Against Remaindermen Named in Unrecorded Will. Patent was issued in 1836, and the record in the General Land Office showed the patentee resided in Lafayette County. By his will, duly probated and recorded in Lafayette County in 1862 but never recorded in Carroll County, he devised the lands, which lay in Carroll County, to his daughter during her natural life, and remainder in fee to her children, the oldest of whom was then seven years of age. In 1867 she and her husband by warranty deed conveyed the lands to a resident of Carroll County for a recited consideration of one thousand dollars. The grantee died in 1867, and in 1909 her children, by publication, brought suit to quiet title against said patentee and his unknown heirs, devisees, descendants and assigns. The children of the life tenant named in the patentee's will did not appear, and the will was not offered in evidence, nor its provisions considered. Judgment was rendered for plaintiffs, vesting the title in fee simple in them. In 1916 said life tenant (the daughter named in the will) died, and

291 Mo.—32

in 1917 her children, as the remaindermen named in the will, filed their motion in said cause, asking that the judgment be set aside for errors of fact. *Held*, that no sufficient error of fact is stated in said motion that will authorize the court to set aside said judgment.

Appeal from Carroll Circuit Court.—*Hon. Ralph Hughes,* Judge.

AFFIRMED.

*John E. Burden* and *Gerson B. Silverman* for appellants.

(1) The trial court erred in ignoring and failing to find that the probated and recorded will of Minitree Catron, in Lafayette County was a link in the chain of title to the lands in controversy, and was notice thereof to the whole world. The will of Catron, the patent owner of the lands in controversy, who was at his death a resident of Lafayette County, duly proved in the probate court of said county and recorded in a record book kept in said court for the purpose of recording last wills and testaments, was an adjudication *in rem,* and notice to all the world of the devises and bequests in said will contained, and of the persons to whom bequeathed, and constituted a link in the chain of title to all lands lying within the boundaries of Missouri, owned by said testator at the time of his death. R. S. 1909, secs. 535, 563, 564, 565; R. S. 1855, chap. 167, sec. 1, p. 1567, and Secs. 26, 27, 28, p. 1571; Benoist v. Murrin, 48 Mo. 48; 3 Redfield, Law of Wills (2 Ed.) p. 63, sec. 9 and note 39; Tremblay v. Ins. Co., 94 Am. St. 557; Ellis v. Woods, 9 Rich. Eq. 19; Nichols v. Hobbs, 197 S. W. 258. (2) The trial court in deciding the issues for respondents, and in overruling appellants' motion to vacate the decree of 1909, erroneously ignored and repudiated the legal conclusion of law that the will of Minitree Catron, devised and conveyed to the appellants

a vested estate in remainder in and to the lands in controversy. Aubuchon v. Bender, 44 Mo. 566; Byrne v. France, 131 Mo. 639; Gates v. Seibert, 157 Mo. 254; Waddell v. Waddell, 99 Mo. 338. At common law there was no obligation to put upon record a conveyance affecting the title of land, and a writing was not essential to the validity of a will, and registry laws were not in vogue prior to the Statute 32, Henry VIII. Tiedeman on Real Prop., sec. 875; Aubuchon v. Bender, 44 Mo. 564. (3) The trial court erred in its decision and findings that it was necessary in order to constitute notice of title, that the will of said Minitree Catron, should have been recorded in Carroll County, within six months after the probate thereof. R. S. 1909, sec. 2823; R. S. 1855, sec. 50, p. 366. None of the foregoing provisions in relation to the acknowledgment, proof or recording of instruments in writing affecting real estate shall be construed as extending to last wills and testaments. It is not necessary to record a domestic will in the local land records or in any recorder's office in any county in the State of Missouri; and if it was so recorded, it would not impart notice; no one could rely upon the record being correct either as to the provisions of the will, or the condition of the testator's estate. Nichols v. Hobbs, 197 S. W. 258. Since the whole system of recordation depends on statutory enactment, the operation of the recording acts can extend only to those instruments which are required to be recorded by the terms or intendment of these statutes. 20 Am. & Eng. Encyc. Law, 572, note 1; R. S. 1909, secs. 566-2810; R. S. 1855, p. 1571, sec. 29; p. 364, sec. 41; Wolf v. Brown, 142 Mo. 612; Lewis v. St. Louis, 4 Mo. App. 563; Rodney v. McLaughlin, 97 Mo. 426; Mosher v. Bacon, 229 Mo. 357. (4) The trial court committed manifest error in its findings and decision on the issues presented by appellant's motion to vacate said decree, in holding and adjudging that said decree was valid and binding upon appellants, and that it settled and determined the title of appellants to the land in controversy ad-

versely to the claims of appellants. This Section 650 is an enabling act intended to protect and preserve estates, and was not enacted to be used for the destruction of estates, or as an instrument of wrong. It gives anyone who is the owner of a particular title a right to have that title equieted in him. It gives no right to the owner of an estate *per autre vie* to have his estate enlarged into a fee during the life of the life tenant. The court must have power to render the particular judgment in the particular case. Charles v. White, 214 Mo. 208; Charles v. Pickens, 214 Mo. 215. Said Section 650 authorizes an action *in personam,* not *in rem.* The decree is not binding on strangers or persons, not parties to the suit, or who have not been served with due process of law. It binds only the parties to the action, and then only when the court has power to adjudicate the particular matter determined. Armor v. Frey, 253 Mo. 474; Harrison Mach. Works v. Bowers, 200 Mo. 236; Dixson v. Hunter, 204 Mo. 383; Powell v. Crow, 204 Mo. 481. Said "decree" is not *res adjudicata* as to the rights of the children of Frances Eveline McFadin. There was no issue raised or litigated between the holders of the life estate and the remaindermen, of their respective titles at said trial. Charles v. White, 214 Mo. 209. The possession of Frances Eveline McFadin, as life tenant and her grantee, Mary A. Simms, and the plaintiffs as heirs of Mary A. Simms, enured to the benefit of appellants as remaindermen, and if said plaintiffs in said suit to quiet title acquired any title or right to said lands by virtue of said decree, such right or title immediately enured by operation of law to the benefit of appellants as such remaindermen. Charles v. White, 214 Mo. 187; Charles v. Pickens, 214 Mo. 215; Armor v. Frey, 253 Mo. 474; Salmon's Admrs. v. Davis, 29 Mo. 176; Allen v. DeGroot, 98 Mo. 159, and note thereto, in 14 Am. St. 628; Peake v. Peake, 228 Mo. 536, and note thereto, in 137 Am. St. 651; Holridge v. Gillespie, 2 John Ch. 33.

*Franken & Timmons* for respondents, John W. Simms, Eilzabeth Christopher, Margaret Flanagan, and the heirs of Catharine Boschert; *Lozier & Morris* and *Conkling & Withers* for respondents, James L. Wilson and Henry Lee Wilson.

(1)   A motion in the nature of a writ of error *coram nobis* is an independent proceeding.   Hirsh v. Weisberger, 44 Mo. App. 510; Halsey v. Meinrath, 54 Mo. App. 340; State ex rel. v. Riley, 219 Mo. 695; Jeude v. Sims, 258 Mo. 44.   (2)   The motion in the nature of a writ of error *coram nobis* being an independent proceeding, there is nothing before this court but the record proper, as a motion for a new trial was not filed. 3 C. J. 972; Hemm v. Juede, 153 Mo. App. 267; Lilly v. Menks, 92 Mo. App. 358; City of Jefferson v. Wells, 263 Mo. 231. (3) There being nothing before this court but the record proper the judgment should be affirmed on such record.   The motion of movents in the nature of writ of error *coram nobis* to vacate the decree in the suit to quiet title assigns as errors of fact matters that cannot be made the basis of the motion in the nature of a writ of error *coram nobis*.   The motion seeks to vacate the decree in the suit to quiet title for alleged errors of law appearing on the face of the record; it seeks to contradict the record in a suit to quiet title; it seeks to readjudicate the question of title which was the subject-matter of the suit to quiet title; it seeks to set aside such decree because of alleged fraud; and it also seeks to set aside such decree because of alleged errors of fact which were wholly immaterial and could not deprive the court of its power and jurisdiction to render the decree that it did render in said suit to quiet title.   None of these matters can properly be made the basis of a writ of error *coram nobis* to vacate a decree:   (a)   The writ of error *coram nobis* can never be used to vacate a judgment for error of law appearing on the face of the record.   23 Cyc. 884; 2 R. C. L. sec. 262, p. 307; Dugan v. Scott, 37 Mo. App. 669; Powell v. Gott, 13 Mo. 458;

State v. Stanley, 225 Mo. 534; State ex rel. v. Riley, 219 Mo. 681.  (b)  The writ of error *coram nobis* never lies to set aside a judgment for alleged error of fact which contradicts the record.  23 Cyc. 884; 2 R. C. L. sec. 262, p. 308; 5 Ency. Pl. and Pr. p. 39; 18 L. R. A. 840, note; Reed v. Bright, 232 Mo. 412; State ex rel. v. Clarkson, 88 Mo. App. 553; Hartman v. Hartman, 154 Mo. App. 244; State v. Standley, 225 Mo. 525; Williams v. Edward, 34 N. C. 118; Black on Judgment (2 Ed.), sec. 330, p. 460; People v. Noonan, 276 Ill. 430.  The petition, order of publication, and judgment in the suit to quiet title constitute the record thereof which is sought to be contradicted by alleged error of fact.  Miller v. Shipley, 94 Mo. 109; Smith v. Mosley, 234 Mo. 495.  (c)  An alleged error of fact cannot be made the basis of a writ of error *coram nobis* if it seeks to establish matters which were adjudicated in the suit, the judgment of which is sought to be vacated by the motion.  The writ of error *coram nobis* cannot readjudicate matters in issue in the original suit.  23 Cyc. 884; 2 R. C. L. sec. 262, p. 308; 18 L. R. A. 840, note; Marble v. Van Horn, 53 Mo. App. 361; Smith v. Young, 136 Mo. App. 65; Estes v. Nell, 163 Mo. 387; Graves v. Graves, 255 Mo. 468; Jeude v. Sims, 258 Mo. 26; Callicotte v. Railway Co., 204 S. W. 528.  (d)  The writ of error *coram nobis* can never be used to vacate a judgment for fraud.  The writ is a common law writ and judgment can be set aside for fraud only by a proceeding in equity. Jeude v. Sims, 258 Mo. 26; Davis v. Robinson, 126 Mo. App. 293; People v. Noonan, 275 Ill. 430.  (e)  No alleged error of fact can be made the basis of a writ of error *coram nobis* to set aside a judgment when the power and jurisdiction of the court to render the judgment did not depend upon the existence of such alleged error of fact. In other words the fact sought to be established must be a material fact the existence of which would have deprived the court of its power and jurisdiction to render a valid judgment in the case had it been known to the court.  The matters assigned in the motion in the

case at bar were wholly immaterial and could not have deprived the court of the power and jurisdiction of rendering the judgment that it did render.   Marble v. Van Horn, 53 Mo. App. 363; State ex rel. v. Clarkson, 88 Mo. App. 556; Cross v. Gould, 131 Mo. App. 598; Smith v. Young, 136 Mo. App. 82; Jones v. Railroad, 183 Mo. App. 230; Jeude v. Sims, 258 Mo. 40; Hobbs v. State, 63 Kan. 324; Corry v. Buddendorff, 98 Miss. 107; L. R. A. (N. S.) 1918 F, 625, note.   (4)   Even though errors appearing on the face of the record were a basis for a motion in the nature of a writ of error *coram nobis,* still the judgment of the circuit court should be affirmed because the petition, order of publication and judgment in the title suit are regular, and the judgment determined that these movents had no interest nor title in the land in controversy.   (a)   The suit to quiet title was a proceeding under Sec. 650, R. S. 1899, and finally determined that movents, the descendants and devisees of Minitree Catron, had no title to the land.   Section 650 is highly remedial in its purposes and has been construed accordingly.   Ball v. Woolfolk, 175 Mo. 285; Graton v. Land & Lumber Co., 189 Mo. 332; Wheeler v. Land Co., 193 Mo. 289; Emmert v. Alderidge, 231 Mo. 164; Williams v. City of Hayti, 184 S. W. 473; Steele v. Stevenson, 104 Kan. 469, 179 Pac. 304.   (b)   The judgment is valid and binding as against movents notwithstanding they were residents of the State.   They were sued as unknown.   Sec. 580, R. S. 1899; Wall v. Lumber Company, 175 Mo. 406; Tooker v. Leake, 146 428; State ex rel. v. Clarkson, 88 Mo. App. 553; Cummings v. Brown, 181 Mo. 716; State ex rel. v. Wessel, 237 Mo. 605; Hambel v. Lowry, 264 Mo. 168; Flemming v. Tatum, 232 Mo. 678; Oregon v. Brunnell, 184 S. W. 102.   (c)   The petition of plaintiffs in the title suit described the interests of movents and how derived as far as the knowledge of plaintiffs extended and hence is sufficient.   Sec. 580, R. S. 1899; Wall v. Lumber Co., 175 Mo. 405; Flemming v. Tatum, 232 Mo. 688; Hambel v. Lowry, 264 Mo. 177.   Knowledge as used in Sec.

580, R. S. 1899, means actual knowledge. Dunbach v. Dysart, 184 Mo. App. 702; Hill v. Utley, 154 Mo. 264; State v. Ranberger, 106 Mo. 135; State ex rel. v. Clarkson, 88 Mo. App. 553. But the will (not recorded in Carroll County) was not constructive notice since there was no statute making it such. Bank v. Real Estate Co., 150 Mo. 570; Williams v. Butterfield, 182 Mo. 185; Kelly v. Vandivet, 75 Mo. App. 435; Gordon v. Pence, 123 Mo. App. 321; Dunbach v. Dysart, 184 Mo. App. 702; Terrell v. Andrew County, 44 Mo. 309; Keaton v. Jorndt, 259 Mo. 197. (d)  The fact that movents may have inherited an interest in said land prior to the institution of said suit from Walter McFadin and Fannie McFadin, devisee of Minitree Catron, would not affect the validity of the judgment in said title suit. Movents were sued as the unknown heirs, devisees and descendants of Minitree Catron. Movents allege in their motion that they are the descendants and devisees of Minitree Catron and make this fact the basis for their motion. "Unknown descendants" was used as a description of the unknown persons sued. The interest of movents as unknown persons being described as far as plaintiffs knowledge extended, the judgment is regular and valid. Sec. 580, R. S. 1899; Wall v. Lumber Co., 175 Mo. 406; Hambel v. Lowry, 264 Mo. 177; Flemming v. Tatum, 232 Mo. 688. (e)  The verification of the petition is sufficient, being sworn to by John W. Simms, one of the plaintiffs and alleging that the heirs, devisees and descendants of Minitree Catron were unknown to all of the plaintiffs. Sec. 580, R. S. 1899; Stull v. Masilonka, 108 N. W. 166.

HIGBEE, J.—Commissioner SMALL states the facts in this case in his report, filed in Division One of this Court, as follows:

"This is a proceeding by appellants by motion for a writ in the nature of a writ of *coram nobis* to set aside a judgment to quiet title rendered against them upon service by publication as unknown defendants.

"Appellants are the children of Frances Eveline Mc-Fadin who died on the 26th day of July, 1916, and the grandchildren of Minitree Catron, who died in 1862. By his will, duly probated and recorded in the office of the Probate Clerk in Lafayette County in 1862 (but never recorded in Carroll County), said Catron devised the lands involved in this case to his daughter, said Frances Eveline McFadin, during her natural life, with remainder in fee to all of her children. She had then living four children, the oldest seven years of age, and after said Catron's death four more children were born to her. Two of said children died, leaving the appellants as their heirs. In the year 1867, said Frances Eveline Mc-Fadin, in a deed joined in by her husband, John McFadin, conveyed said land to Mary A. Simms by deed containing full covenants of warranty and for the consideration of one thousand dollars. Said Mary A. Simms died in 1887, leaving her husband and her children, John W. Simms and others, designated as the plaintiffs in this cause, as her heirs. On July 22, 1909, the plaintiffs, as such heirs (their father also then being deceased), brought suit to quiet title in the Circuit Court of Carroll County against the unknown heirs and devisees of Minitree Catron, further alleging that said unknown defendants were non-residents and lived outside of the State of Missouri, and could not be served with the ordinary process of law. Judgment was obtained in said cause by default, September 28, 1909. Mrs. McFadin, the mother of the appellants, dying in 1916, the appellants on the 17th day of September, 1917, filed in said suit to quiet title, their motion, now before us, for a writ in the nature of a writ of *coram nobis,* asking the court to set aside said judgment for errors of fact not appearing on the record, of which, had the court been advised, it would not have rendered judgment against appellants in said cause.

"Such facts, as charged in said motion, are substantially as follows: That the petition in the suit to quiet title charged that the unknown devisees of said

Catron were all non-residents of Missouri, so that the ordinary process of law could not be served upon them in this State. Whereas, the appellants were devisees of said Catron, and as such owned the remainder in fee in said real estate, and at the time said petition was filed and said judgment was rendered, and for more than 30 years prior thereto, had resided in said Lafayette County, Missouri, except one of the appellants, who then and for many years before, lived in Jackson County, Missouri. That they were all, and for many years had been, well known people in said Lafayette and Jackson counties. That the patents for said land were issued by the United States to their said grandfather, Catron, in 1836, and described him as of Lafayette County, Missouri, where he then lived, and continued to live up to the time of his death in 1862, and where the same year, 1862, his will, devising the remainder in fee to appellants, after the termination of the life estate of their mother, the said Frances Eveline McFadin, was duly probated and recorded in the office of the Clerk of the Probate Court of said Lafayette County. That by reason thereof, the plaintiffs were charged with full knowledge of appellants' title, at and long before the institution of said suit to quiet title. And, furthermore, as a matter of fact, the plaintiffs, at and before bringing such suit, knew or by the exercise of due diligence in making inquiries, could have ascertained the names and places of residence of appellants, and the extent and nature of their estate in said lands. But that said plaintiffs brought suit fraudulently against the devisees of said Catron as non-resident unknown parties. That appellants had no notice or knowledge of said suit until just before the filing of their motion herein. That by reason of the facts alleged in said motion not appearing from the record or upon the trial of said cause, the court erroneously rendered judgment against appellants therein, and rendered it without jurisdiction which it would not have done had it known of the existence of such facts.

"After the filing of appellants' said motion, the respondents, John W. Simms et al., plaintiffs in said suit to quiet title, filed a motion to overrule the motion of appellants, substantially for the following reasons: That the facts stated in appellants' motion did not entitle them to any relief; and further setting up that Mary A. Simms, their mother, in 1867, purchased said property, paying full value therefor in good faith, believing she was obtaining a perfect title from Frances Eveline McFadin, and receiving a general warranty deed therefor. That their said mother died in 1887, intestate, leaving their father and the plaintiffs as her heirs, and that from the date of said purchase in 1867, their parents during their lifetime, and the plaintiffs thereafter until they sold to the respondents, Wilson, in 1911, were in open, notorious and adverse possession of said property, claiming to own the same absolutely and against the whole world. But, that in 1909, they had the records in Carroll County examined and found that there was no deed from the patentee, Minitree Catron, to their mother's grantor, Frances Eveline McFadin, or anyone else; that, therefore, they brought suit to quiet title, making the heirs and devisees of said Catron parties, as unknown defendants. That they were unknown to plaintiffs, and that interests they had in said property, if any, were unknown to them. That during all of said years that they and their ancestors had been in possession of and claiming to own said property, they never heard of any of the plaintiffs, nor of any other persons, making any claim to said property; that they knew nothing of the will or residence of said Catron; that his said will was never recorded in Carroll County.

"Plaintiffs further in their said motion, set out the entire record of the proceedings in said suit to quiet title, and alleged, that the judgment therein was binding upon the appellants and all other devisees of said Catron. They, however, admit in their said motion, that appellants were the devisees of said Catron, and do not deny that they all lived in Lafayette and Jackson

Counties, Missouri, were well known in said counties, and had no notice of said suit to quiet title, as alleged in appellants' motion.

"Respondents James L. Wilson, et al., appeared in said cause, and filed a motion to overrule a motion filed by appellants, in substance the same as that of plaintiffs John W. Simms et al., with the addition, that they, since said judgment quieting title was rendered, had purchased the property from the plaintiffs in said cause; that they were innocent purchasers, had no knowledge or notice of any of the matters alleged in appellants' motion, and paid full value for the property.

"On the trial of these motions, appellants' evidence tended to prove their title as devisees of their grandfather, Minitree Catron, and that his will was duly probated and recorded in the office of the Probate Clerk in Lafayette County on August 26, 1862, and their residence in Lafayette and Jackson counties in this State. Appellants' evidence further tended to prove that they were well known in said Lafayette and Jackson counties for many years before said suit to quiet title was instituted, all as alleged in their said motion, and that they had no notice whatever of the institution of said suit to quiet title or the rendition of judgment therein, until the year after their mother's death, when their motion was filed in 1917.

"The evidence for the plaintiffs-respondents tended to show that they never knew there was any defect in their title or their mother's title, until just prior to the commencement of the suit to quiet title, when they discovered that there was a missing link. The abstract they procured showed the entry of Minitree Catron in 1836, but said entry left his place of residence blank; a bond for title from John McFadin, the father of appellants, to one Edward Hamill in 1865, describing the parties as of Lafayette County, Missouri; and a warranty deed from appellants' mother, Frances Eveline McFadin, to Mary A. Simms, the mother of the plaintiffs, in 1867, for the consideration of $1000, describing the grantor as of

Lafayette County.  All of these documents were duly recorded and for many years had been in said Carroll County before said suit to quiet title was instituted. The patents to Minitree Catron were recorded in 1838, in the General Land Office at Washington, D. C., but never in Carroll County.  There was no conveyance nor will of said Minitree Catron of record in said Carroll County, or shown upon said abstract.  The evidence of plaintiffs further showed that they never made any inquiry in Lafayette County as to any will that might have been made by said Catron and probated and of record in the probate court of that county, and never inquired of any one as to the names or whereabouts of the heirs or devisees of said Catron; that they knew nothing and heard nothing of them during the fifty years that they and their parents had lived on and claimed the property; that they and their parents, since their mother obtained her warranty deed in 1867 from Mrs. McFadin, were in undisturbed possession of said property, claiming absolute ownership thereof, and always supposed that her title and their title as her heirs was good until the abstract showed the missing link just before they brought their suit to quiet title; that at the trial and before judgment was rendered quieting title in them, the court heard evidence showing the plaintiffs' long possession and title and that the whereabouts of said Catron and the heirs and devisees of said Catron and their interests, if any, in the property, were unknown to the plaintiffs.

"The evidence of the intervenors and respondents Wilson and others showed that they knew nothing as to the appellants or their title, except what was disclosed by the records of Carroll County and the records in the suit to quiet title, and that they purchased in 1911 the property and paid a valuable consideration therefor from the plaintiffs after judgment was rendered quieting title in them.

"The petition to quiet title, filed on said 22nd day of July, 1909, is as follows:

" 'State of Missouri, County of Carroll. In the Circuit Court, September Term, 1909. John W. Simms, Catherine Boschert, Elizabeth Christopher and Margaret Flanagan, plaintiffs, vs. Robert Thompson, Bettie Grider, Callie Wilson, Minitree Catron, Edward Hamill, John Potter; the unknown wife or widow and the unknown heirs, the unknown descendents, the unknown devisees and the unknown assigns of Minitree Catron; the unknown wife or widow and the unknown heirs, the unknown descendents, and the unknown devisees and the unknown assigns of Edward Hamill; the unknown wife or widow and the unknown descendents, the unknown heirs, the unknown devisees and the unknown assigns of John Potter; the unknown widow, the unknown heirs, the unknown descendents, the unknown devisees and the unknown assigns of William J. Todd, deceased, defendants.

" 'Now come plaintiffs and for their cause of action state that they are the owners in fee simple and are in peaceable possession of the following described land in Carroll County, Missouri, to-wit:

" 'The east half of the northeast quarter of section one in township fifty-one of range twenty-five; also the east half of the southeast quarter of section one in township fifty-one of range twenty-five; also the southeast quarter of the southwest quarter of section thirty-one in township fifty-two of range twenty-four; also the northwest quarter of the northwest quarter of section six in township fifty-one of range twenty-four in Carroll County, Missouri; that plaintiff John W. Simms is the owner of an undivided nine-twenty-fourths of said land, and plaintiffs Catherine Boschert, Elizabeth Christopher and Margaret Flanagan are each entitled to an undivided five-twenty-fourths of said land.

" 'Plaintiffs further state that the defendants claim some title, interest or estate in said premises adverse to that of plaintiff, the nature or character of said title, interest or estate which defendants or any of them claim cannot be more definitely stated (except as is herein-

after done) because it is unknown to plaintiffs except that it is adverse to plaintiffs.

" 'Plaintiffs further state that there are persons interested in the subject-matter of this petition whose names plaintiffs cannot insert because they are unknown to plaintiffs, said unknown persons being the defendants herein designated and referred to in caption as unknown, to-wit, the unknown wife or widow and the unknown heirs, the unknown descendents, the unknown devisees and the unknown assigns of each of the following named persons, respectively: Minitree Catron, Edward Hamill, John Potter and William J. Todd; that the title, interest or estate which said unknown persons (defendants) claim or might claim in said land or any part thereof is such as they derived by the statutes of descent and distribution, of dower and homestead of the State of Missouri, by devise, by deed of conveyance or by assignment from said persons respectively, to-wit, Minitree Catron, Edward Hamill, John Potter and William J. Todd. Plaintiffs cannot further describe the interest of said unknown persons, defendants herein, nor how said interest, if any, was derived, because such is unknown to plaintiffs and plaintiffs have described herein the right, title, interest and estate, if any, in said land, of the said unknown defendants and how said interest, title and estate was derived so far as plaintiffs' knowledge extends.

" 'Plaintiffs further state that all of the defendants (except Robert Thompson, Bettie Grider, Callie Wilson) including the defendants herein described as unknown, are non-residents of the State of Missouri, residing outside of the State of Missouri, so that the ordinary process of law cannot be served upon them within this State.

" 'Wherefore, plaintiffs pray for an order of publication against the non-resident and unknown defendants, notifying them of the pendency of this petition, the nature and character thereof, and that the court hear and determine this cause and by its judgment and decree ascertain and determine the estate, title and in-

terest of the parties, plaintiffs and defendants, and ascertain and determine the title and estate of plaintiffs in and to said land to be as herein set forth, and by its judgment and decree to estop and debar defendants and each of them from claiming any interest in and to said land or any part thereof.

" 'State of Missouri, County of Carroll.

" 'John W. Simms having been duly sworn states in his own behalf and on behalf of his co-plaintiffs herein that the allegations of the above and foregoing petition are true.

" 'JOHN W. SIMMS,

" 'In his own behalf and in behalf of his co-plaintiffs herein.

" 'Sworn and subscribed to before me, a notary public within and for Carroll County, Missouri, this 22nd day of July, 1909. My term expires July 27, 1910. Witness my hand and official seal at Norborne, Mo., July 22, 1909.

" 'W. A. FRANKEN.

" 'We hereby designate the Carrollton Democrat of Carrollton, Missouri, a weekly newspaper of general circulation, published within Carroll County, and which we designate as most likely to give notice to the non-resident and unknown defendants.

" 'W. A. Franken, Attorney for Plaintiffs, John W. Simms, Catherine Boschert, Elizabeth Christopher, Margaret Flanagan.'

"The order of publication follows the language of the petition and need not to be set out.

"The judgment, rendered on the 28th day of September, 1909, omitting the caption which is the same as the caption in the petition, is as follows:

" 'Now on this day come plaintiffs, but the defendants and each of them, although duly summoned according to law, come not but make default, and this cause coming on for hearing, the court finds that the order of publication heretofore entered by the clerk of this court

in vacation against all of the defendants named and referred to in the caption, except Robert Thompson, Bettie Grider and Callie Wilson, was duly published in the Carrollton Democrat, a weekly newspaper published in the town of Carrollton, Carroll County, Missouri, for four successive weeks, the last insertion being more than thirty days before this September term of this court, and that each and all of said defendants including Robert Thompson, Callie Wilson and Bettie Grider were duly and legally served with process more than thirty days before the first day of this September term of this court.

" 'The court further finds that this is a proceeding under Section 650 of the Revised Statutes of 1899 of the laws of Missouri and upon the evidence adduced by plaintiffs, the court finds that plaintiffs, Catherine Boschert, John W. Simms, Elizabeth Christopher and Margaret Flanagan are the absolute owners in fee simple of the following described land situate and being in Carroll County, Missouri, to-wit [Description same as in the petition]; that plaintiff John W. Simms is the owner of an undivided nine-twenty-fourths of said land, and that plaintiffs, Catherine Boschert, Elizabeth Christopher and Margaret Flanagan are each entitled to an undivided five-twenty-fourths of said land; and the court further finds that the defendants, Robert Thompson, Bettie Grider, Callie Wilson, Minitree Catron, Edward Hamill, John Potter, the unknown wife or widow and the unknown heirs, the unknown descendents, the unknown devisees and the unknown assigns of Minitree Catron, the unknown wife or widow and the unknown heirs, the unknown descendants, the unknown devisees, and the unknown assigns of William J. Todd, deceased, and each and all of them have no title, interest or estate in said land or any part thereof.

" 'The court doth here ascertain and determine that plaintiffs are the owners of said land and each and every part thereof, in the shares as aforesaid, absolutely and in fee simple, and that neither the defendants nor any of them have any title, interest or estate in or

291 Mo.—33

to said land or any part thereof. And the court doth further adjudge and decree that the defendants and each of them be estopped and debarred from ever setting up or claiming any title, interest in or to said land or to any part thereof.

" 'The court doth further adjudge that the plaintiff pay the costs of this suit.'

"No instructions were asked or given.

"After hearing the evidence on the several motions, the court overruled appellants' motion to set aside said judgment, and found the facts stated in the motions of respondents Simms et al. and Wilson et al. to be true. Also found that appellants are the descendants and devisees of Minitree Catron, the original patentee of the land; that his will was duly probated in the probate court of Lafayette County, Missouri, August 26, 1862; but that no copy thereof was filed in the Recorder of Deeds, office of Carroll County until 1916; and that neither the plaintiffs' ancestor nor the plaintiffs themselves, nor the said Wilson to whom they sold the land in 1911, had any knowledge or notice of the existence of said will, nor of facts sufficient to put them on inquiry in regard thereto, until 1916; and no knowledge or notice of or concerning said Minitree Catron, nor of his residence, except that he was the original patentee of said land, nor of the residence, whereabouts or interests of his devisees, nor of the existence of his will. The court also found that proof in accordance with the facts known by the plaintiffs at the time was offered and heard by the court upon the trial of the case.

"No motion for new trial was filed, but the appellants in due time filed a bill of exceptions, and appealed from the order of the court overruling their said motion to this court."

I. In this State a motion to vacate a judgment for error of fact, and not for patent error of record, supported by evidence *dehors* the record, takes the place of the common-law writ of error *coram nobis,*

**Motion to Vacate Judgment.** and is in the nature of an independent and direct attack upon the judgment of the court committing the error. [State ex rel. v. Riley, 219 Mo. 667, 695.] The motion is in the nature of an application for a writ of error *coram nobis,* and is in the nature of a pleading, and does not have to be preserved by a bill of exceptions. [Jeude v. Sims, 258 Mo. 26, 44.] Issues must be made up under a writ of error *coram nobis,* and these must be tried, if necessary by a jury; but the writ does not open up the whole case for a new trial, but only those points and questions raised by the application for it. [23 Cyc. 885 (4).] The motions filed by the respondents set up their defenses and, with the movents' reply, made up the issues. These motions, therefore, were in the nature of answers and are pleadings in the case. This being an in-**No Motion for New Trial.** dependent proceeding and not an adjunct to the original action, we cannot review matters of exception in the absence of a motion for a new trial. There is, therefore, nothing before us but the record proper. [Jefferson City v. Wells, 263 Mo. 231, 250; Hemm v. Juede, 153 Mo. App. 259, 267.]

It may clarify the case to consider the relief that may be had in a proceeding of this nature. In Cross v. Gould, 131 Mo. App. 585, 597, NORTONI, J., speaking for the court, said:

"A writ of error *coram nobis* is parcel of that procedure which came to us with the common law. It issues out of and for the purpose of review by the same court in which the record lies and predicates upon errors of fact as contradistinguished from errors of law. Besides for error in process through the default of the clerk (Bronson v. Schulten, 104 U. S. 410; Tidd's Practice (4 Am. Ed.) sec. 1137), the writ would lie at common law when the court had proceeded in a case as though a fact which was material to its right to proceed, existed, when it did not exist, and when the absence of the fact assumed to exist, entirely defeated the power of the court to attain a valid result in its proceeding. [Citing cases.]

"It may be taken as a proposition settled entirely beyond controversy in the law of this country and of England that the writ of error *coram nobis* does not go to errors arising on facts submitted to a jury, referee, or to the court sitting as a jury to try the issues of fact. [Bronson v. Schulten, supra; 5 Ency. Pl. & Pr., 736.] Nor will this writ lie for the purpose of correcting errors of law."

The learned jurist cited instances: a judgment rendered against an insane person without the intervention of a guardian; where a defendant dies after service of process and before judgment; where a married woman was sued without her husband being joined and judgment rendered against her (before the Married Woman's Act); judgment against an infant without a guardian *ad litem*, etc.

In Jeude v. Sims, 258 Mo. 26, 40, WALKER, J., delivering the opinion of Court in Banc said:

"At common law writs of error *coram nobis* were writs granted by the court rendering the judgment for the purpose of correcting some error of fact. [Tidd's Practice, p. 1136.] The fact must be such a fact, that had it been known at the time of the rendition of the judgment, such judgment would not have been entered. It must be a fact directly connected with the case in which the judgment was entered, and a fact wrongly, considered in the entry of the judgment which is sought to be corrected by the writ of error *coram nobis*. To illustrate, the court enters a judgment against a dead person after service, on the theory that he is still alive, or against a minor thinking such minor was an adult. In other words, the erroneous fact must be one which entered into the very makeup of the judgment sought to be overruled and set aside by the writ, and the real fact sought to be established upon the hearing of the writ must be one which would have prevented the entry of the judgment had it been known to the court. [State v. Stanley, 225 Mo. l. c. 534; State ex rel. v. Riley, 219 Mo. 667.] In the Stanley Case, supra, this court said:

'But again, this writ is only allowed to recall some adjudication made while some fact existed which, if before the court, would have prevented the rendition of the judgment, and which without any fault or negligence of the party was not presented to the court.' The motion in this case simply sets up that the plaintiffs fraudulently misled counsel for the defendants as to the time of the trial of the cause. Whilst such conduct, if shown upon a trial by bill in equity to set aside the judgment for fraud, would perhaps be good, yet we fail to find any case wherein such fact is a ground for the common law writ of error *coram. nobis*. In our practice a motion is considered as an application for such a writ. The writ being heard in the same court which issues it, is usually never issued at all, but the matter is determined upon a hearing of the matters raised in the application (in this State in the motion) as if a formal writ had been issued. [5 Ency. Pl. & Pr., 36.]"

Again, in 23 Cyc. 883 D:

"1. This is a writ which lies in the same court which rendered a judgment, and brings its own judgment before it for review and reversal or modification, on account of some error of fact, not of law, affecting the validity and regularity of the proceedings, and which was not brought into the issue. It is not a writ of right. It can be granted only on a showing of cause, and then it is in the discretion of the court whether, on the affidavits presented, to allow the writ or not, and its decision will not be reviewed by an appellate court. In most of the states, if not abolished by statute, it has become obsolete, being superseded by the more speedy and efficacious remedy by motion in the same court.

"2. Error *coram nobis* does not lie to correct any error of law, its office being confined strictly to errors of fact. Only such errors can be assigned as are consistent with the record before the court, and the court will not look into the cause of action on which the judgment was rendered, or consider any facts which might have been presented to the court on the trial of the

cause, and still less any facts which were put in issue and adjudicated upon the trial. But the writ may issue where there is a vital jurisdictional defect not apparent on the face of the record, or on account of the death of a party before judgment, or the infancy, insanity, or coverture of defendant, such disability not having been brought to the notice of the court before judgment, or where a default has been irregularly entered against a party not legally in default, or has been taken against him by fraud, accident, or mistake, without fault on his part.''

It will be seen, however, that relief is not granted in this State on the ground of fraud, and doubtless would not be on the ground of accident or mistake, those being distinct grounds of relief in equity. Jeude v. Sims, supra, and Cross v. Gould, supra, in that respect are therefore disapproved.

II. The principal error of fact alleged in the motion is that the petition in the suit to quiet title charged that the unknown heirs and devisees of Minitree Catron were non-residents of Missouri, so that the ordinary process of law could not be served upon them, whereas they were all well known residents of the counties of Jackson and Lafayette and had been for thirty years, and were the owners of the fee in remainder.

*Immaterial Fact.*

Minitree Catron died in the year 1862. There was no deed or will on record in Carroll County by which he conveyed or devised the land in suit. Eveline McFadin and her husband had conveyed the land by a warranty deed to Mary Simms in 1867. She and her children, the respondents, had had exclusive possession, claiming title in fee, fom 1867 until July, 1907, when it was discovered that there was no deed on record from Minitree Catron, the patentee of the land. Although appellants had lived in an adjoining county all these years, yet they had never visited the land or communicated with the respondents or their mother, nor even recorded a

copy of the will. There was nothing to suggest to the respondents that the children of the McFadins had an interest in the land, or that the McFadins had perpetrated a gross fraud on their children or their grantee in conveying the land. The appellants' long, unexplained silence, from 1867 to 1909, would seem to be enough to convince any reasonable person that there was simply a missing link in the record title. They had been as silent as the tomb and so continued until 1917, a period of fifty years. Their existence was unknown to respondents. Under these circumstances, respondents began an action against Minitree Catron and his unknown heirs and devisees, etc., as provided by Section 650, Revised Statutes 1899.

This is a highly remedial act. It has been amended so as to enable parties to have their titles and all conflicting interests speedily settled and determined. [R. S. 1919, sec. 1910.] Respondents did not know whether Catron was living or dead, or if dead, who were his heirs or devisees. We have held that a party may proceed by publication against a defendant if living, or if dead, against his unknown heirs. [Hambel v. Lowry, 264 Mo. 175, 174 S. W. 405.] We regard the publication in this case as a substantial compliance with the statute in that respect.

The contention now made is that designating the unknown heirs and devisees of Minitree Catron as non-residents of the State, so that the ordinary process of law could not be served upon them within this State, was error of fact; that the trial court believed they were non-residents of the State and that they, as such non-resident defendants, had been duly and legally served with notice and process in this cause by publication, and, acting on such belief and supposition, the court rendered the said judgment by default and decree in this cause against these movents, as such devisees and descendants.

It must be apparent that the averment complained of was wholly superfluous and not required by the statute. The allegations in the petition in other respects

are in strict compliance with the statute in proceedings against unknown persons. Whether unknown defendants are or are not residents of the State is, under the statute, wholly immaterial, and a fact unnecessary to be stated. If the appellants had seen and read the order of publication, the superfluous averment could not have misled them. Viewed in any conceivable light, it was mere surplusage. Their residence or non-residence was not a·fact which was material to the right of the court to render the judgment, nor could it have had any influence on the court's action in the premises. [Cross v. Gould, supra.] "The fact must be such a fact that had it been known at the time of the rendition of the judgment, such judgment would not have been entered." [Jeude v. Sims, supra.]

III. It is further contended under this head that the record of the patent to Minitree Catron in the General Land Office at Washington showed that he was a resident of Lafayette County, Missouri, and **Chain of Title as Notice.** that the deed from the McFadins disclosed their residence; that respondents thus had notice of facts which put them on inquiry and that the judgment was concocted in fraud. It is also contended that respondents are charged with notice of every fact appearing in their chain of title and hence cannot be heard to say that they were ignorant of the will of Minitree Catron, which, being probated and recorded in the office of the probate judge of Lafayette County, disclosed the residence and interests of the appellants.

Respondents claimed through the deed executed by the McFadins to Mary Simms in 1867; they never heard of Catron's will until this action was commenced in the year 1917, and of course did not claim under it. It did not lie in the chain of their recorded title; they, in fact, held adversely to the will. "It is well settled law in this State that a purchaser of land is charged with constructive notice of everything contained or recited in the recorded deeds which lie in and constitute the chain

of title under which he holds.'' [McDonald v. Quick, 139 Mo. 484, 498, and cases cited; Marshall v. Hill, 246 Mo. 1, 30.]

In State ex rel. v. Clarkson, 88 Mo. App. 553, the Collector of Howell County sued the defendant for delinquent taxes, by publication, alleging that he was a non-resident of the State. Clarkson's deed was on record in the recorder's office of Howell, showing· that he was a resident of Randolph County. The defendant filed a motion in the nature of a writ of error *coram nobis* to set aside the judgment on the ground that the court in rendering the judgment and ''overruling a special execution for the sale of the land'' committed an error of fact and·had no jurisdiction of the person of the defendant. The Court of Appeals held that proof that Clarkson was a resident of the State did not prove or tend to prove that the court committed an error of fact in the rendition of the judgment fatal to its validity. The judgment of the trial court overruling the motion was affirmed. [See also Payne v. Lott, 90 Mo. 676, 682.]

This court, in State ex rel. v. Wessell, 237 Mo. 593, 604, referring to the statute authorizing judgments upon notice by publication, said:

''The statute which authorizes the court of this State to render judgments in such cases as we are now considering, upon imputed notice by publication, does not by its terms confine its operation to those who are actually non-residents of the State, but it provides that if the plaintiff or other person for him *shall allege in his petition* that a defendant is a non-resident of the State the clerk of the court in vacation shall make an order directed to him, notifying him of the commencement of the suit, and that if he fails to appear on the day named, and answer, the petition will be taken as confessed.''

The learned writer of this opinion then quoted approvingly from the Clarkson Case, supra, in part as follows:

" 'This order of publication was duly published and proven. In Tooker v. Leake, 146 Mo. l. c. 429, speaking of a similar order made in a tax case under like circumstances, the court, through Brace, J., said: "When so' published and the publication proved, the defendants in said action are as effectually served with process as if served by summons, and a final judgment rendered upon such service is just as conclusive as a judgment rendered upon service of summons, except that the defendant in the former case may within three years after the rendition thereof have the same reviewed and set aside for good cause as provided in Revised Statutes 1889, Section 2217 et seq." ' "

IV. Movents also assign as errors of fact that the court believed and supposed it to be true that Minitree Catron was alive; also that the wife or widow of Minitree Catron was alive, whereas Minitree Catron died in 1862 and his widow died in 1891.

*Deceased Defendant.*

The statute, as said, is highly remedial and was intended to accomplish the purpose of its enactment. It is a practical and workable act. How could the respondents have known that Catron or his wife were living or dead? They might have assumed, according to the ordinary span of human life, that one who entered land in the year 1836 was dead in 1909, but there are many instances opposed to such an assumption. We have held that it is proper to join as co-defendant one having an apparent interest, if living, or if dead, his unknown heirs or devisees. [Hambel v. Lowry, 264 Mo. 168, 175.] Of course the judgment against Minitree Catron is a nullity, but that does not affect the validity of the judgment against the unknown heirs or devisees when properly joined as co-defendants. The very language of the averment would advise the court that Minitree Catron might or might not be living, and refutes the assignment.

V.   It is also assigned as an error of fact that the court believed and supposed it to be a fact that the plaintiffs herein were the absolute owners in fee of the aforesaid lands, whereas, they simply owned the life estate of Frances Eveline McFadin, and had the court known such fact, or had such fact been presented to the court, it would not have rendered said judgment or decree.   Section 650, Revised Statutes 1899 (Sec. 2535, R. S. 1909), authorized any person having any title, interest or estate in real property to commence an action against any person having or claiming to have any title, estate or interest in such property to have his title, interest or estate ascertained and determined.   The judgment of the court determined that plaintiffs were the owners in fee of the land involved in the action.   On this motion the assignment cannot be considered, as it is not consistent with the decree rendered by the court.   [Reed v. Bright, 232 Mo. 399, 412.]   "Only such errors can be assigned as are consistent with the record before the court and the court will not look into the cause of action on which the judgment was rendered or consider any fact which might have been presented to the court on the trial of the cause and still less any facts which were put in issue and adjudicated upon the trial."   [23 Cyc. 884, supra.]   Any other theory would emasculate the statute and authorize the reopening of the case at any time, without regard to the statute which affords the right to review the judgment within three years after its rendition, and there would be no end to the litigation.   [Marble v. Vanhorn, 53 Mo. App. 361, 364.]

*Life Estate Instead of Fee: Finality of Judgment.*

VI.   Appellants rely upon State ex rel. Hudson v. Heinrich, 14 Mo. App. 146, in which a motion to vacate a judgment was rendered against the defendant for delinquent taxes on an order of publication as a non-resident when he in fact lived in the county in which the judgment was rendered.   The motion, while considered as in the nature of a writ of

*Scope of Motion.*

error *coram nobis,* was in fact filed within three years after the rendition of the judgment, and a reopening of the case was authorized under the statute providing for a review of the judgment within three years after its rendition, but the action of the learned court in treating the motion as a writ of error *coram nobis* was a misconception of the scope and function of that writ and is not in harmony with our later rulings, cited supra.

VII. It is alleged in the motion that the petition in the original action was verified by John Simms, one of the plaintiffs, only, and it is argued that the statute re-

**Error of Law.** quires that the petition should have been sworn to by all of the plaintiffs, and in the absence of such verification the court had no jurisdiction of the action, and its judgment is a nullity. The language of the statute, Section 580, Revised Statutes 1899, is: "If any person shall allege in his petition under oath," etc.

We held, in Rohrer v. Oder, 124 Mo. 24, that a petition by a collector of revenue in an action against unknown defendants to recover delinquent taxes, verified by his attorney only, was not properly verified, and that a judgment rendered on publication on such petition was a nullity. It is not necessary for the decision of this case to rule on this point, for the reason that if the petition was not properly verified, it was an error of law, apparent on the face of and not *dehors* the record.

VIII. Appellants allege in their motion that the court believed and supposed the facts to be that the defendants, the decendants and devisees of said Minitree Catron, had no interest in said land, whereas said Catron,

**Probate of Will: Proceedings in Rem.** by his will duly probated in the probate court of Lafayette County, August 26, 1862, and duly recorded in the records of said court, devised said lands to his daughter Frances Eveline McFadin, the mother of the movents, during her life, with a vested remainder in fee in said

lands to her children who resided in said county, and that said Frances Eveline McFadin had conveyed her life estate in said lands to Mary A. Simms, the mother of plaintiffs, of which fact the court was wholly uninformed, and that if the court had known such facts it would not have rendered said judgment.

It is argued that the probate of the will in Lafayette County was a proceeding *in rem* and was constructive notice to the world of the rights of the beneficiaries named in the will. If that be true then the judge of the court who rendered the judgment had constructive notice thereof as well as the respondents. Counsel cite Benoist v. Murrin, 48 Mo. 48, where it is said at page 52: "The proceedings were *in rem*, operating directly upon the will—the *res*."

If the judge had notice of the will and of the rights of the beneficiaries in the land, then it cannot be said that he acted in ignorance of the facts. However, the oft repeated statement that the appellants owned the remainder in fee in the lands under the provisions of the will and that the respondents had knowledge thereof, is inconsistent with the findings of the court and cannot be considered on this motion, as suggested in paragraph 5 of this opinion. That would be to look into the cause of action on which the judgment was rendered, a proceeding authorized on a petition to review the judgment filed within three years after the rendition of the judgment.

IX. Appellants contend that the respondents owned an estate *pur autre vie* and can do nothing to prejudice the estate of the remaindermen, and are estopped to claim title adversely to them. This question was considered in Mathews v. O'Donnell, 289 Mo. 235, in Division Two of this court, where it was held that a life tenant, being charged with the duty of paying taxes, could gain no advantage by permitting the land to go to sale on a judgment for delinquent taxes and buying it in at such sale. In that case

*Duty of Life Tenant.*

the recorded deed under which the defendant derived title showed that he acquired the estate of the life tenant and had no other interest. This contention, however, cannot be considered in a proceeding of this character.

There are other questions raised in appellants' brief, but what we have said disposes of all the matters in issue against appellants' contentions.

It is proper to add that this is a hard case; one that has appealed very strongly to us and has received close consideration. The appellants, it must be conceded, through indifference to their own interests, have lost their patrimony of no inconsiderable value. As WILLIAMSON, J., who recently graced this bench, has aptly said: "The tragedies of this life are not the contests between right and wrong, but between right and right."

The judgment is affirmed. All concur.

## ON MOTION FOR REHEARING.

HIGBEE, J.—I. Appellants suggest that we have inconsistently quoted from the bill of exceptions after holding that, in the absence of a motion for new trial, it could not be considered. We said, in substance, that although appellants had lived in an adjoining county all these years, that is, from 1867, yet they had never visited the lands. This, we think, is a fair deduction from respondents' answer to appellants' motion. The court found that the averments therein were true and this was not questioned at the argument. This fact had no influence in the determination of the case. Our statement also that the McFadins had perpetrated a gross fraud on their children or on their grantee, Mary Simms, in conveying the land to Mrs. Simms, is also criticised as being based on the evidence. The record shows that Mrs. McFadin and her husband conveyed the land to Mrs. Simms in 1867, by warranty deed. Appellants charge that the respondents had constructive notice of their title when they commenced the action to determine title in 1909, and that they fraudu-

*Bill of Exceptions.*

lently imposed on the court in procuring the judgment. It still seems to us that if there were any fraud in the case it was the act of the life tenant in executing a warranty deed conveying a fee simple title to an innocent purchaser who, it is said, paid full value. It would have been a fraud on Mrs. Simms if she got less than a fee. If Mrs. McFadin had simply conveyed her life estate no one could have been harmed. We think the statement complained of is self-evidently true, although it also had no influence in the determination of the case.

I.   We readily concede that appellants, as remaindermen, under their grandfather's will, could not assert a claim in court to the possession of the land until the death of their mother, the life tenant, in 1916, and the fact that they did not visit the land or assert their interest during their mother's lifetime would not estop them to claim title after their Jurisdiction. mother's death. But they failed to record a copy of the will in the office of the recorder of Carroll County as required by Section 536, Revised Statutes 1919. They could have protected their interest as remaindermen by an action, during the life of their mother, to determine title. They had constructive notice of the action to determine title and failed to assert their rights or to file a petition to set aside the judgment within three years after its rendition.

In this connection, appellants renew their main contention that the Carroll County Circuit Court had no jurisdiction because they were residents of this State. As shown by the cases cited in the opinion, the averments of the verified petition, in conformity with the statute, now Section 1202, Revised Statutes 1919, conferred jurisdiction. The allegation that the unknown defendants were non-residents was as immaterial as if it had been averred that they professed the doctrine of foreordination and predestination. In so disregarding the averment, the court did not amend the petition or take advantage of appellants' special appearance solely for the purpose of their motion to vacate the judgment.

III. Appellants, in their motion for rehearing, say: "Does not Judge GRAVES of this court in State ex rel. v. Riley, 219 Mo. 682, 683, say: 'The motion (*coram nobis*) will lie where a valid defense exists in the facts of the case, but which, without negligence on the part of the defendant, was not made,' etc.? Would not the will have been a valid defense to the quiet-title suit?"

*Duress: Fraud and Excusable Mistake.*

This is what Judge GRAVES said:

"In 5 Ency. Plead. and Prac., 26-27, the office of the writ is thus described and defined: 'The office of the writ of *coram nobis* is to bring the attention of the court to, and obtain relief from, errors of fact, such as the death of either party pending the suit and before judgment therein; or infancy where the party was not properly represented by guardian; or coverture, where the common law disability still exists; or insanity, it seems, at the time of the trial; or a valid defense existing in the facts of the case, but which, without negligence on the part of defendant, was not made, either through duress or fraud or excusable mistake; these facts not appearing on the face of the record, and being such as, if known in season, would have prevented the rendition and entry of the judgment questioned.' "

It is not averred in appellants' motion that the defense based on the will of Minitree Catron was not made through duress, fraud or excusable mistake. It was simply an ordinary judgment by default on notice by publication. It is alleged, in substance, that plaintiffs had constructive notice of appellants' title at the time the suit was brought, and by exercise of due diligence in making inquiries could have ascertained the names and places of residence of appellants and the extent and nature of their estate in the lands; that plaintiffs brought the suit fraudulently against the devisees of said Catron as non-resident parties, and appellants had no notice thereof until just before the filing of their motion; that the court erroneously rendered judgment against appel-

lants therein and rendered it without jurisdiction, which it would not have done had it known of the existence of such facts.

It is unnecessary for us to rule that in a case where a defendant is prevented from presenting a valid defense existing in the facts of a case, by duress, fraud or excusable mistake, relief will be granted on error *coram nobis*. That question is not before us. We held in Jeude v. Sims, supra, that fraud in the procurement of a judgment cannot be relieved against in this sort of a proceeding. On a motion of this character, only such errors can be assigned as are consistent with the record before the court, and the court will not look into the cause of action on which the judgment was rendered, or consider any facts which might have been presented to the court on the trial of the cause. Our statute (Secs. 1532 and 1533, R. S. 1919) provides that a judgment in a case wherein the court acquired jurisdiction by constructive service may be reviewed if the defendant shall within three years appear and by petition for review show good cause for setting aside such judgment. [Tooker v. Leake, 146 Mo. 419, 430.]

IV.   This court has frequently held that a judgment rendered on constructive service is as conclusive as though there had been personal service, save the right that the defendant has to appear within three Constructive years and have it set aside on a showing of Service: good cause. [Tooker v. Leake, supra.] That Judgment. is the limit to the period of grace allowed by the statute. If appellants' contention be conceded, a judgment determining title on constructive service is a futile thing, since the Statute of Limitations does not apply to error *coram nobis*. [State ex rel. v. Riley, supra.]

V.   Another contention is that Fannie McFadin and Walter McFadin, children of the life tenant, were dead before the institution of this suit to quiet title and the appellants were not sued in the capacity

291 Mo.—34

Simms v. Thompson.

**Heirs of Deceased Remaindermen: Sufficient Allegations.** of heirs of these two deceased remaindermen. The action was against the unknown heirs, descendants, devisees and assigns of Minitree Catron. The petition contained all the essential allegations in an action to determine title against unknown persons. It alleged that "plaintiffs cannot further describe the interest of said unknown persons, defendants herein, nor how said interest, if any, is derived, because such is unknown to plaintiffs, and plaintiffs have described herein the right, title, interest and estate, if any, in said land of the said unknown defendants and how said interest, title and estate were derived, so far as plaintiffs' knowledge extends." Obviously, plaintiffs could not allege in their petition that the appellants had derived interests from these deceased remaindermen when their very existence was unknown to them. Such a theory would emasculate the statute.

VI. Appellants say we have overlooked the decisions in Nichols v. Hobbs, 197 S. W. 258, and Wolf v. Brown, 142 Mo. 612. In the Nichols Case the land lay in the county in which the will was probated. The **Other Cases.** case has no application. In the Wolf Case, judgment was rendered against Stafford on publication twenty-seven years after his death, and the land was sold on the void judgment. Stafford, who lived and died in Iowa, had devised the land to the plaintiffs who had failed to record the will in St. Louis, where the land lay. It was held that the judgment and tax deed were void, and that the failure to record the will did not affect the defendants' rights, because they did not claim title through the devisees, but under a void judgment. If the suit for delinquent taxes had been against Stafford and his unknown heirs and devisees, a different question would have been presented.

VII. They also contend that when John W. Simms made the false affidavit to quiet the title no effort was

made to learn the whereabouts of the appellants; that

**Fraud.** the record of the will in Lafayette County was notice of its recitals and of the devise and of the devisees. They say "the affidavit was a lie, and can it be said that right can be supported on a lie?" If these contentions were meritorious, the judgment was procured by fraud, and appellants might have maintained an action in equity to set it aside, but relief on the ground of fraud is not available on error *corãm nobis*.

VIII. They further suggest that the appeal was taken from the order overruling their motion to

**Appeal from Order.** set aside the judgment and not from a judgment, and there was no judgment to affirm. It was at least an order from which an appeal would lie.

IX. It is also said that respondents never had any title and that they cannot recover on a chain of title beginning nowhere; that Minitree Catron was the common source of title and appellants have the better claim. This again goes to the merits of the action and is

**Finality of Judgment: Married Women.** concluded by the judgment. Again, it is said that three of the appellants are and were married women against whom the Statute of Limitations would not run. This is a question not involved in the case. It may be conceded that appellants have been guilty of no laches or negligence and have done no act whereby they should lose their property, still the fact remains that if we accord full faith and credit to the solemn judgment of a court having jurisdiction in the premises, they are concluded by that judgment.

The motion for rehearing is overruled, and the order of the trial court overruling the motion to set aside the judgment is affirmed. *Graves, Walker, Elder* and *David E. Blair, JJ.*, concur; *James T. Blair, C. J.*, concurs in result; *Woodson, J.*, not sitting.